COURT OF APPEALS

EIGHTH DISTRICT OF
TEXAS

EL PASO, TEXAS

 

 


 
 
  
 DAVID URIEL-RAMIREZ,
  
                            
 Appellant,
  
 v.
  
  
 THE STATE OF TEXAS,
  
                            
 Appellee.
 
 
  
   '
     
   '
     
   '
     
   '
     
   '
     
  '
 
  
 
 
  
  
                   No. 08-11-00132-CR
  
 Appeal from the
  
 Criminal
 District Court Number One
  
 of El
 Paso County, Texas 
  
 (TC# 20100D00533) 
  
 
 


 

O
P I N I O N

 

Appellant, David Uriel-Ramirez, appeals the
trial court’s denial of his motion to suppress. 
We affirm.

BACKGROUND

By indictment, Appellant was charged with
possession with intent to deliver cocaine (Count I), and possession of
marijuana (Count II).  Appellant filed a
pretrial motion to suppress evidence in which he asserted that the search of
his business, which led to the discovery of the cocaine and marijuana, was
effected without a warrant, without probable cause or reasonable suspicion, and
without valid consent.

At the suppression hearing, Detective Thomas
Lawrence, who was assigned to the El Paso Police Department’s narcotics division
and stash-house unit, was involved in an investigation of Appellant’s business,
an auto shop.  When Detective Lawrence,
who was in plain clothes, and other officers entered the garage area of the
business, which was open to the public, he announced, “Hello, police,” and
Appellant and another person responded from the back of the garage.  Detective Lawrence displayed his badge and
identification and informed Appellant, who had identified himself as the owner
of the business, that the narcotics division had received information that
Appellant’s business was being used to store drugs.  After Appellant denied that drugs were on the
premises, Detective Lawrence asked Appellant for permission to conduct a
search.  When Appellant asked if a search
warrant had been obtained, Detective Lawrence indicated that he did not have
one.  According to Detective Lawrence,
Appellant then extended his hand and said, “Go ahead.”

When Detective Lawrence asked Appellant to
present identification, Appellant went to a desk area and was followed by
Detective Jerry Humphrey.  Upon
Appellant’s return, Detective Lawrence observed Appellant drop a plastic bag on
the floor and, upon retrieving it, Detective Lawrence saw that it contained a
substance which he believed to be cocaine. 
Detective Humphrey, who had remained in the desk area, called out,
“Evidence.”  This implied to the other
officers that Detective Humphrey had seen something in the area, and when Detective
Lawrence again asked Appellant if there were any drugs in the area, Appellant
replied, “No.”  At this time in the
initial encounter, the detectives had not commenced to search the business or
its premises.  Thereafter, Appellant and
Detective Lawrence walked toward a door next to the desk and Detective Lawrence
observed bundles of what appeared to be narcotics located inside a room next to
the desk.  Although Detective Lawrence
did not smell marijuana, the other detectives began searching the garage and
found bundles of marijuana in the room by the desk.

Appellant, who was present throughout the
search, never revoked or withdrew his consent to search his business but
refused to consent to a search of his home when requested by Detective
Lawrence.  Upon cross-examination,
defense counsel elicited testimony from Detective Lawrence that it is common
practice for the narcotics unit to rely on oral or verbal consent even though
the police department has written consent forms, and that he did not use a
written consent form on the day Appellant’s business was searched.  Detective Lawrence also explained that he had
not informed Appellant that he could refuse to consent to a search because he
was not required by law to do so.  Detective
Lawrence denied that Appellant had requested to speak with his attorney, acknowledged
that the officers did not have probable cause to conduct a search before
approaching Appellant’s business, and repeated that Appellant had given his
consent for the officers to search the business premises.

Appellant denied consenting to a search of his
business and stated that he had advised the officers that they could not
proceed without a warrant.  According to
Appellant, after the officers stated that they had no warrant, he told them,
“Then you cannot go inside.  Go ahead,
but I’m not letting you go in on my permission.”  Appellant also testified that he told the
officers, “If there’s something else, I could call my lawyer[.]”  Appellant testified that he was never informed
that he could refuse to consent to a search and he denied dropping the bag of
cocaine.  On cross-examination, Appellant
denied that the officers had requested consent to search his residence.

Detective Frank Gutierrez testified during
the State’s rebuttal that he, too, observed Appellant drop the bag of cocaine,
and testified on cross-examination that the standard operating procedure of the
stash-house unit was to rely on “valid verbal consents” rather than using
written consent forms in obtaining consent to search.  He also explained that although officers
sometimes inform a person that he has the right to refuse to consent, they do
not always do so because they are not required to provide this information to a
person.  Detective Humphrey testified
that he heard portions of Detective Lawrence’s conversation with
Appellant.  Detective Humphrey heard: (1)
Detective Lawrence ask for Appellant’s consent to search; (2) Appellant ask Detective
Lawrence if he had a warrant; (3) Detective Lawrence respond that he did not
have a warrant; and (4) Appellant say, “Go ahead.”

Appellant argued that any consent he
provided was involuntarily given because he was not advised that he could
refuse to consent.  He also argued that
the officers’ testimony was not credible, that it was not reasonable to believe
that he would drop a bag of cocaine in the presence of the officers, and that
the trial court should believe his testimony over that of the officers.  The State argued that an assessment of credibility
favored the detectives.

After hearing evidence and arguments of
counsel, the trial court orally denied Appellant’s motion to suppress and later
entered written findings of fact and conclusions of law in which it accepted
the detectives’ testimony regarding Appellant’s consent and the events leading
to the discovery of the contraband, and found that Appellant neither asked the
detectives to secure a warrant or terminate the search of his business.  The trial court determined that Appellant’s
consent to search was voluntary and concluded that: (1) Detective Lawrence
engaged in a consensual encounter with Appellant; (2) Appellant was not under
arrest at the time; (3) Appellant gave Detective Lawrence verbal consent to
search his business; (4) Appellant’s verbal consent was never limited or
withdrawn; and (5) Appellant’s verbal consent to search his business was given
without threat or coercion.

DISCUSSION

Consent to Search and Standard of Review 

A search conducted with a person’s voluntary
consent is an exception to an otherwise “per
se unreasonable” search that has been conducted without a warrant based on
probable cause.  See Meekins v. State, 340 S.W.3d 454, 458 (Tex.Crim.App.
2011).  Consent to search may be
communicated by words, action, or circumstantial evidence showing implied
consent.  Id.  To be voluntary under
the Fourth and Fourteenth Amendments, however, consent must not be coerced by
explicit or implicit means nor by implied threat or covert force.  Schneckloth
v. Bustamonte, 412 U.S. 218, 219, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973); Meekins, 340 S.W.3d at 458-59.

Whether a person’s consent to search was voluntary
is a question of fact to be determined in each case from the totality of the
circumstances of the particular situation. 
Meekins, 340 S.W.3d at 459; Reasor v. State, 12 S.W.3d 813, 818
(Tex.Crim.App. 2000).  Factors which a
court may examine when determining whether a person voluntarily consented to a
search include, but are not limited to, the person’s age, education and
intelligence, whether the consenting person was in custody, whether the person
was arrested at gunpoint, whether the person had the option of refusing
consent, the constitutional advice given, the length of the detention, the
repetitiveness of any questioning, and the use of physical punishment.  See
Reasor, 12 S.W.3d at 818.  The
ultimate question to be determined is whether the individual’s will has been
overborne and his capacity for self-determination critically impaired, such
that his consent to search must have been involuntary.  United
States v. Watson, 423 U.S. 411, 424, 96 S.Ct. 820, 46 L.Ed.2d 598 (1976), quoting Schneckloth, 412 U.S. at 225
(internal quotations omitted); Meekins,
340 S.W.3d at 459.

The State must prove the voluntariness of a
person’s consent to search by clear and convincing evidence.  The trial judge is the exclusive trier of
fact as to the credibility of the witnesses’ testimony at a suppression
hearing, and may choose to believe or disbelieve any or all of a witness’s
testimony.  See St. George v. State, 237 S.W.3d 720, 725 (Tex.Crim.App. 2007); see also Amador v. State, 221 S.W.3d
666, 673 (Tex.Crim.App. 2007); Peralta v.
State, 338 S.W.3d 598, 607 (Tex.App.–El Paso 2010, no pet.).  We do not engage in our own factual review of
the trial court’s decision.  Garcia v. State, 15 S.W.3d 533, 535
(Tex.Crim.App. 2000).

Utilizing a bifurcated standard of review,
we give almost total deference to a trial court’s ruling on questions of
historical fact and application-of-law-to-fact questions that turn on an
evaluation of credibility and demeanor, and review de novo those application-of-law-to-fact questions that do not turn
on credibility and demeanor.  See Amador, 221 S.W.3d at 673; Estrada v. State, 154 S.W.3d 604, 607
(Tex.Crim.App. 2005).  We review a trial
court’s ruling on a motion to suppress evidence viewing all of the evidence in
the light most favorable to the trial court’s ruling.  State
v. Garcia-Cantu, 253 S.W.3d 236, 241 (Tex.Crim.App. 2008).  Because a determination of the validity and
voluntariness of a person’s consent to search is a fact issue and is
necessarily fact intensive, we accept the trial court’s finding on the
voluntariness issue unless it is clearly erroneous.  Meekins,
340 S.W.3d at 460.  We afford to the
prevailing party the strongest legitimate view of the evidence and all
reasonable inferences that may be drawn therefrom.  Meekins,
340 S.W.3d at 460; Garcia-Cantu, 253
S.W.3d at 241.  We review the trial
court’s legal ruling de novo unless
the trial court’s supported-by-the-record explicit fact findings are also
dispositive of the legal ruling.  State v. Kelly, 204 S.W.3d 808, 818
(Tex.Crim.App. 2006).

In Issue One, Appellant complains that the
State failed to meet its burden of producing evidence to establish probable
cause and that the trial court erred in finding that probable cause existed
because the State’s witnesses and evidence provided no factual basis to support
such a finding.  We disagree.

We note first that the State never asserted
that it had probable cause to conduct a warrantless search of Appellant’s business,
and the trial court never found probable cause existed to do so.  Rather, the State’s proffered basis for
seeking a denial of Appellant’s suppression motion was that Appellant
voluntarily consented to the search, an exception to the warrant-supported-by-probable-cause
requirement, and the trial court found that Appellant’s consent to search was
voluntary.  See Meekins, 340 S.W.3d at 458. 
Thus, the State was not required to demonstrate that probable cause
existed for the search.  Because the
trial court did not make a finding that probable cause existed, Appellant has
failed to show that the trial court erred. 
Issue One is overruled.

In Issue Two, Appellant specifically asserts
that: (1) he did not consent to a search of his business premises; (2) the
voluntariness of his consent, if any, is measured by his understanding that he
had an option to refuse giving consent to search and knew enough about the
officers’ proposed activity to make an informed decision about it; and (3) his
consent was involuntarily given because the detectives did not inform him of
his right to refuse granting them consent to search.  We disagree.

The trial court heard conflicting evidence
regarding whether Appellant had voluntarily consented to a search of his
business premises.  Detectives Lawrence
and Humphrey testified that after asking Appellant if they could search his
business premises and informing Appellant that they did not have a warrant to
conduct a search, Appellant stated, “Go ahead.” 
This evidence is sufficient to support the trial court’s finding that
Appellant consented to the search, as an ordinary, objectively-reasonable
person could have understood that Appellant was consenting to the search of the
premises.  See Meekins, 340 S.W.3d at 458-59; see also, e.g., Johnson v. State, 68 S.W.3d 644, 652-54
(Tex.Crim.App. 2002).  Appellant has
failed to show that the trial court’s finding that Appellant consented to the
search was “clearly erroneous.”

Appellant’s contention that his consent was
involuntarily given also fails.  Contrary
to his assertion, voluntariness is not measured by Appellant’s “understanding
of whether he had an option to refuse the search . . . .”  Under a totality-of-the-circumstances
analysis, whether an officer has advised an individual of his right to refuse
consent may be a relevant factor in determining voluntariness of consent, but
it is not dispositive and does not automatically render the person’s consent to
search involuntary.[1]  See
Harrison v. State, 205 S.W.3d 549, 553 (Tex.Crim.App. 2006); Johnson, 68 S.W.3d at 653.

Based upon the contradictory suppression
evidence, the trial court could have reasonably believed that Appellant
voluntarily consented to the search despite his contrary testimony, which the
trial court was free to disbelieve.  See Johnson, 68 S.W.3d at 652-54.  In Johnson,
the defendant’s consent to search was found to be voluntary where officers had
arrested the defendant pursuant to a warrant, the handcuffed defendant answered
officers’ request to search by stating, “Sure, go ahead,” and pointing to a
room, and the officers testified that no threats were made, no Miranda warnings were given, no written
consent-to-search form was used, and the defendant was not advised of right to
refuse consent to search.  See Johnson, 68 S.W.3d at 652-54.  Unlike the defendant in Johnson, Appellant was not arrested nor placed in handcuffs at the
time consent to search was requested and given. 
Moreover, although Appellant presented no testimony that he did not know
he had a right to refuse consent, the suppression evidence demonstrated that he
possessed such knowledge as Appellant refused the detectives’ request that Appellant
consent to a search of his home.  Consequently,
these facts are more favorable to a finding of voluntariness than those in Johnson. 
See Johnson, 68 S.W.3d at
652-54.

Appellant has failed to show that the trial
court’s denial of his motion to suppress evidence was clearly erroneous.  From this record, we are unable to find that
Appellant’s will was overborne and his capacity for self-determination
critically impaired, such that his consent to search must have been
involuntary.  See Watson, 423 U.S. at 424; Schneckloth,
412 U.S.at 225; Meekins, 340 S.W.3d
at 459.  The trial court’s findings of
fact are supported by the record and show that Appellant clearly,
unequivocally, and voluntarily consented to the search of his business
premises.  See Johnson, 68 S.W.3d at 652-54. 
Issue Two is overruled.

CONCLUSION

The trial court’s judgment is affirmed.

 

                                                                        GUADALUPE
RIVERA, Justice

 

October 31, 2012

 

Before McClure, C.J., Rivera, J., and Antcliff, J.

 

(Publish)











[1]
We find Appellant’s reliance upon Vargas
v. State, 18 S.W.3d 247, 254 (Tex.App.–Waco 2000, pet. ref’d) to be
misguided.  Although the Vargas Court found that among the
factors supporting a finding of voluntariness was the fact that the officer
advised Vargas of his right to refuse consent, the Court did not suggest nor
require that an admonishment regarding the right to refuse a search was necessary
for a finding of voluntariness.  See id.